Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET LINDNER**
  **SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
Tel:  (310) 392-8801
Fax:  (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California  90064
Tel:  (310) 836-6000
Fax:  (310) 836-6010
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Maureen Davidson-Welling (*pro hac* to be filed)
Wyatt A. Lison (*pro hac* to be filed)
**STEMBER FEINSTEIN DOYLE**
  **PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Emails:jkravec@stemberfeinstein.com
Email:mdavidsonwelling@stemberfeinstein.com
Email: wlison@stemberfeinstein.com

*ATTORNEYS FOR PLAINTIFF*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **KIMBERLY S. SETHAVANISH, a California resident on behalf of herself and all others similarly situated,**<br><br>      **Plaintiff,**<br><br>  **v.**<br><br>**BALANCE BAR COMPANY, a Delaware corporation,**<br><br>     **Defendant.** | **CASE NO.:  4:11-cv-04547-PJH**<br><br><u>**CLASS ACTION**</u><br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff, by her attorneys, brings this class action against Defendant Balance Bar Company ("Defendant" or "Balance Bar"), on her own behalf and on behalf of all others similarly situated, and alleges as follows based upon information and belief and the investigation of her counsel:

**INTRODUCTION**

1.      This is a class action brought on behalf of Plaintiff and a nationwide class of consumers, as more fully defined herein, who, from December 1, 2009 through the present ("Class Period"), purchased Balance Bar's Nutrition Energy Bars identified in paragraph 41 of this Second Amended Complaint (hereafter "Nutrition Energy Bars") labeled, marketed and sold as being "All Natural" even though each bar contain between five (5) and ten (10) of the following artificial and/or synthetic ingredients:   Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Potassium Carbonate, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate and/or Tocopherols.   Each of these ingredients is recognized as a synthetic chemical or ingredient by federal regulations, making Balance Bar's claim that the Nutrition Energy Bars are "All Natural" literally false.  *See* paragraphs 20-28, *infra*.

2.      Throughout the Class Period, Balance Bar prominently made the claim "All Natural" on the labels of its Nutrition Energy Bars, cultivating a wholesome and healthful image in an effort to promote the sale of these products, even though its Nutrition Energy Bars were actually not "All Natural."   While the "All Natural" Nutrition Energy Bars' labels did disclose that they contain Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate or Tocopherols, the labels did not disclose that these ingredients were synthetic or artificial.[1]  Moreover, Balance Bar did not disclose the Potassium Carbonate in its Nutrition Energy Bars, listing it instead as "Cocoa [Processed with Alkali]" or "cocoa powder processed with alkali" as further described in paragraph 24, *infra*.

---

[1] Plaintiff does not seek, and nothing herein shall be read as seeking, to compel Balance Bar to label or identify ingredients in its Nutrition Energy Bars as synthetic, as artificial or otherwise as not natural.  Rather, Plaintiff seeks to have Balance Bar remove the false and misleading "All Natural" claim from the labels of its Nutrition Energy Bars that contain non-natural, synthetic or artificial ingredients.  Such "All Natural" claims are not required under federal food laws and, accordingly, if used on a label must be done so in a truthful and accurate manner.

3.    In light of the Nutrition Energy Bars' labels' "All Natural" representations, a reasonably prudent consumer would certainly not expect the Nutrition Energy Bars to include any synthetic or artificial ingredients, including the non-natural, synthetic and artificial ingredients identified herein.  Indeed, as a result of this false and misleading labeling, Balance Bar was able to sell these purportedly "All Natural" Nutrition Energy Bars to thousands of unsuspecting consumers throughout the United States and to profit handsomely from these transactions.[2]

4.    Plaintiff alleges that Balance Bar's conduct violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* (the "MMWA"), gives rise to a cause of action for common law fraud, violates the unlawful, unfair, and fraudulent prongs of California's Business and Professions Code §§ 17200, *et seq.* (the "UCL"), violates California's Business and Professions Code §§ 17500 *et. seq.* (the "FAL"), and violates the Consumers Legal Remedies Act of the California Civil Code §§ 1750, *et seq.* (the "CLRA").  Plaintiff also alleges that Balance Bar's conduct is grounds for restitution on the basis of quasi-contract.

5.    Balance Bar Company is incorporated in Delaware and has its headquarters at 115 East Stevens Avenue, Valhalla, New York.   Balance Bar has major manufacturing facilities in California, from which Balance Bar directs a substantial portion of its nationwide manufacturing, labeling, sales and business operations, including its Nutrition Energy Bars.  It is therefore believed and averred that a substantial portion of the misleading labeling and related misconduct at issue in this Second Amended Complaint occurred, were conducted and/or were directed and emanated from California, including, but not limited to: ) the design of Balance Bar's Nutrition Energy Bars' packaging; b) the review, approval and revision of the Nutrition Energy Bars and labeling; c) the selection and integration of ingredients into the Nutrition Energy Bars; d) the distribution of the Nutrition Energy Bars nationwide; and e) the management and supervision of sales operations to Plaintiff and the Class (as defined herein).

---

[2] This is a food mislabeling class action.  Thus, the false advertisements at issue in this Second Amended Complaint are Balance Bar's Nutrition Energy Bars' labels and packaging in which the Nutrition Energy Bars at issue were purchased by Plaintiff and the Class, and not on any separate television, radio, print, internet or other media advertising apart from the Nutrition Energy Bars' labels and packaging.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

6. Plaintiff also seeks injunctive and declaratory relief based upon Balance Bar's conduct asserted in this Second Amended Complaint. As of the date of this Second Amended Complaint, retail stores in California and throughout the United States are selling Balance Bar's Nutrition Energy Bars labeled as "All Natural," even though they contain artificial and synthetic ingredients. Moreover, even if Balance Bar elects to remove the "All Natural" representation from the labels, Balance Bar is not presently enjoined from putting the "All Natural" representation back on its labels at any time it so decides, even if its Nutrition Energy Bars still contain synthetic or artificial ingredients. Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure that Balance Bar removes any and all of the "All Natural" representations from labels on its Nutrition Energy Bars available for purchase, and to prevent Balance Bar from making the "All Natural" representation on its Nutrition Energy Bars' labels in the future as long as the Nutrition Energy Bars continue to contain synthetic or artificial ingredients.

**PARTIES**

7. Plaintiff Kimberley S. Sethavanish has been a resident of Windsor, California in Sonoma County since December 2010. From at least September 14, 2007 to December 2010, Ms. Sethavanish resided in Orange, California. Ms. Sethavanish is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural. From approximately September 2009 through April, 2010, while residing in Orange, California, Ms. Sethavanish purchased every two weeks at either the Target or Wal-Mart stores near her then residence one multi-bar package of Balance Bar Nutrition Energy Bars, including Defendant's Double Chocolate Brownie flavor Balance Bar and S'mores flavor Balance Bar Gold Nutrition Energy Bars. From December, 2010 until about three (3) weeks before the filing of her original Complaint when she first learned Balance Bar's Nutrition Energy Bars were not "All Natural," Ms. Sethavanish purchased every four to six weeks at either the Target or Raley's stores near her residence in Windsor, California one multi-bar package of Balance Bar's Nutrition Energy Bars, including Defendant's Double Chocolate Brownie flavor Balance Bar and S'mores flavor Balance Bar Gold Nutrition Energy Bars. Based on the "All Natural" representation on Balance Bar's Nutrition Energy Bars' labels, Ms. Sethavanish believed that the Nutrition Energy Bars she

purchased were all natural and relied on this representation in making her purchases.  Unbeknownst to Ms. Sethevanish, however, the Nutrition Energy Bars that Ms. Sethavanish purchased contained artificial and/or synthetic ingredients.  Ms. Sethavanish not only purchased Balance Bar's Nutrition Energy Bars because the label said they were "All Natural," but she paid more money for the products than she would have had to pay for other nutrition energy bars that were not all natural. Had Ms. Sethavanish known the truth that Balance Bar's Nutrition Energy Bars were not all natural, she would not have purchased Balance Bar's Nutrition Energy Bars, but would have purchased another brand of nutrition energy bar that was truly all natural or, if one was not available, would have purchased other non-natural nutrition bars that were less expensive than Balance Bar's Nutrition Energy Bars.  Indeed, since learning that Balance Bar's Nutrition Energy Bars are not all natural, Ms. Sethavanish has stopped buying them.  Ms. Sethavanish did not receive the "All Natural" products she bargained for when she purchased Balance Bar's "All Natural" Nutrition Energy Bars, and has lost money as a result in the form of paying a premium for Balance Bar's Nutrition Energy Bars.

8.      Balance Bar is a leading energy bar producer in the United States incorporated in Delaware with its current headquarters at 115 East Stevens Avenue, Valhalla, New York 10595. Originally headquartered in Carpinteria, California, Balance Bar touts itself as one of the originators of energy and the nutrition bar category, and was founded in 1992 by a group of "sports enthusiasts, scientists and people with a passion for life in Santa Barbara, CA."[3]  From 2000 until December 2009, Balance Bar Company was owned and operated by Kraft Foods Inc., the nation's largest packaged-foods company.  On or about December 1, 2009, Balance Bar was bought by Brynwood Partners, a private equity firm based in Greenwich, Connecticut.[4]  Throughout the Class Period, Balance Bar maintained manufacturing facilities for its Nutrition Energy Bars in Southern

---

[3] http://www.balance.com/about/ attached hereto as Exhibit 1.

[4] It is believed and therefore averred that the "All Natural" statement first appeared on Balance Bar Nutrition Energy Bars' labels and packaging on or about December 1, 2009 after Brynwood Partners purchased Balance Bar from Kraft Foods, Inc.

California, and a substantial proportion of its manufacturing, labeling, sales and business operations, including for Balance Bars' Nutrition Energy Bars, occurred and emanated from California.

9.      Balance Bar manufactures and distributes a full spectrum of energy bar products from its Southern California manufacturing facility.  The company's mission statement is to "inspire our consumers to lead active, well-rounded lives by providing great-tasting and healthy, convenient nutrition for lasting energy."[5]  Defendant's Nutrition Energy Bars are sold and distributed nationwide in grocery stores, health food stores and other venues.

### JURISDICTION AND VENUE

10.      Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2).  Diversity jurisdiction exists as Representative Plaintiff Sethavanish is a California resident, residing in Sonoma County, and purchased Balance Bar's Nutrition Energy Bars in this District during the period December 2010 until August 2011.  Balance Bar is incorporated in Delaware, has its current principal place of business is in New York and maintains manufacturing facilities in California.  The nationwide class ("Class") consists of citizens and residents of states across the country.[6]  The amount in controversy exceeds $5,000,000 for Representative Plaintiff and Class members collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and the Class, and the profits reaped by Balance Bar from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

11.      Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are in this judicial district, and Balance Bars has received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of Balance Bars' "All Natural" Nutrition Energy Bars from retail locations

---

[5] *See* http://www.balance.com/about/mission/ attached hereto as Exhibit 2.

[6] If a national class is not certified, Plaintiff reserves the right, in the alternative, to seek class certification of a multi-state class as well as a California-wide sub-class against Balance Bar.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

herein.  Further, Balance Bar inhabits and/or may be found in this judicial district, and the interstate

trade and commerce described herein is and has been carried out in part within this judicial district.

## BACKGROUND

12.    Webster's New World Dictionary defines "natural" as "produced or existing in

nature; not artificial or manufactured."[7]  "All" is defined as "the whole extent or quantity of."[8]  Thus,

the combined use of "All Natural" on the labels of Balance Bar's Nutrition Energy Bars indicates to

the average reasonable person that "the whole extent or quantity of" the ingredients contained in the

Nutrition Energy Bars are "produced or existing in nature; not artificial or manufactured."

13.    Balance Bar made broader and more encompassing representation by labeling the

Nutrition Energy Bars as "All Natural" as opposed to simply saying they were "natural."  No federal

statutes, federal regulations or federal policies have specifically addressed the broader representation

made by labeling a product as "All Natural," and the only federal policy to address "All Natural"

labeling is for meat and poultry products which requires disclosure of any synthetic or artificial

ingredients so as to indicate they are not natural.

14.    The United States Food and Drug Administration ("FDA") – which has responsibility

for regulating the labeling of the Nutrition Energy Bars at issue in this case as well as many other

foods – has not promulgated a regulation defining the terms "natural" or "All Natural."  It has

established a policy regarding use of the term "natural" by clarifying that a product is ***not*** natural if it

contains          color,          artificial          flavors,          or          synthetic          substances.

http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm[9]                              and

http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.[10]    Specifically,  the  FDA

states: "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that

---

[7] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1984), "natural," definition no. 2 at p.947.

[8] *Id.*, "all," definition no. 1 at p. 36.

[9] Attached hereto as Exhibit 3.

[10] Attached hereto as Exhibit 4.

nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003). Although this definition is not a regulation, it is the "most definitive statement of the agency's view."[11]

15.    Similar to the FDA, the United States Department of Agriculture ("USDA"), which regulates the labeling of meat and poultry, has also set limits on the use of the term "natural" stating that the term "natural" may be used on labeling of meat and poultry products so long as "(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservative … or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed."[12]

16.    According to the USDA, "[m]inimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices."[13]    However, "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."[14]

17.    Under the USDA's guidelines, if a product is severely processed, the product can be labeled "All Natural" only if the ingredient would not significantly change the character of the product to the point that it could no longer be considered a natural product.   However, even in that case, ***"the natural claim must be qualified to clearly and conspicuously identify the ingredient,***

---

[11] *See* letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries et al., v. Hornell Brewing Co., Inc.*, Case No. 10-1139 (N.D. Cal.), Docket No. 54, attached hereto as Exhibit 5.

[12] *See* United States Department of Agriculture Food Standards and Labeling Policy book available at   http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf   (last   visited March 19, 2012), excerpts also attached hereto as Exhibit 6 at p. 5.

[13] *Id.*

[14] *Id.*

---

7

*e.g., all natural or all natural ingredients except dextrose, modified food starch, etc.*"[15] (emphasis added).

18.    The terms "synthetic" and "artificial" closely resemble each other and in common parlances are taken as synonymous.  The scientific community defines "artificial" as something not found in nature, whereas a "synthetic" is defined as something man-made, whether it merely mimics nature or is not found in nature.[16]  In the scientific community, "synthetic" includes substances that are also "artificial," but a synthetic substance also can be artificial or non-artificial.[17]  However, the common understanding of "artificial" resembles the scientific community's definition of "synthetic."  Indeed, Webster's New World Dictionary identifies the two terms as synonymous defining "artificial" as "anything made by human work, especially if in intimation of something natural," and "synthetic" as "a substance that is produced by chemical synthesis and is used as a substitute for a natural substance which it resembles."[18]

19.    Congress, as part its law related to the identification of products as being "Organic," has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).  *See also* 7 C.F.R. § 205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21)     of     the     Act     (7     U.S.C.     §     6502(21)").

---

[15] *Id.*

[16] Peter E. Nielsen, *Natural-synthetic-artificial!*, Artificial DNA: PNA & XNA, Volume 1, Issue 1 (July/August/September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ and attached hereto as Exhibit 7.

[17] *Id.*

[18] Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 1984), "artificial," definition SYN at p.79.

---

8

**SYNTHETIC INGREDIENTS**

20. **Ascorbic Acid.** Ascorbic Acid is a form of vitamin C used in foods as an antioxidant and as a preservative, and is recognized as synthetic by federal regulation. 7 C.F.R. § 205.605(b). Unlike natural vitamin C, synthetic Ascorbic Acid is generally produced from corn or wheat starch being converted to glucose, then to sorbitol and then to Ascorbic Acid through a series of chemical processes and purification steps.[19] Ascorbic Acid is in each of Balance Bar's eighteen (18) Nutrition Energy Bars at issue in this action. *See* paragraph 41, *infra*.

21. **Calcium Pantothenate.** Calcium Pantothenate is a synthetic form of one of the vitamins in the vitamin B complex. It is often used in dietary supplements because, as a salt, Calcium Pantothenate is more stable than natural vitamin B5, pantothenic acid. For use in food, federal regulations recognize that Calcium Pantothenate is to be "prepared synthetically from isobutyraldehyde and formaldehyde" for commercial purposes. 21 C.F.R. § 184.1212. Calcium Pantothenate is in each of Balance Bar's eighteen (18) Nutrition Energy Bars at issue in this action. *See* paragraph 41, *infra*.

22. **Calcium Phosphate.** Calcium Phosphates are insoluble, non-acid calcium salts of phosphoric acid. They are colorless powders used in agricultural fertilizers, as a plastic stabilizer, and sometimes in baking powders. Calcium Phosphate in any of three forms (mono-, di- or tribasic) are recognized synthetics by federal regulation. 7 C.F.R. § 205.605(b). Balance Bar incorporates either Calcium Phosphate or Tricalcium Phosphate in each of its eighteen (18) Nutrition Energy Bars at issue in this action. *See* paragraph 41, *infra*.

23. **Glycerine.** Glycerine (a/k/a Glycerin, Glycerol or Vegetable Glycerin) is a synthetic alcohol that rarely exists in its free form in nature. It is used in some food products as a sweetener, as a preservative, or as a thickening agent. Glycerine is commonly manufactured for commercial use through the hydrolysis of fats and oils during the manufacturing of soap products, or synthesized from the hydrogenolysis of carbohydrates or from petrochemicals. Glycerine could, alternatively, be produced through a fermentation process using yeast; however, due to the resulting low yields and

---

[19] *See* http://www.quali-c.com/dn_vitamin-C-production-ascorbic-acid/.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

1   presence of byproducts formed through the fermentation process, commercial manufacturers use the

2   synthetic processes above to produce Glycerine rather than the more natural fermentation method.

3   Commercial glycerin used in food products manufactured by either of the two commonly used

4   methods is a recognized synthetic product.  21 C.F.R. § 172.866; 7 C.F.R. § 205.605(b); 7 C.F.R. §

5   205.603; 21 C.F.R. § 178.3500.  It is believed, and therefore averred, that the Glycerine in Balance

6   Bar's Nutrition Energy Bars is synthesized using one or both of the two commonly used

7   manufacturing methods – hydrolysis of fats and oils or hydrogenolysis of carbohydrates or

8   propylene – and not derived naturally.  Thirteen (13) of Balance Bar's Nutrition Energy Bars at issue

9   in this action include Glycerine.  *See* paragraph 41, *infra*.

10       24.   **Potassium Carbonate (a/k/a "cocoa (processed with alkali)" or "cocoa powder**

11   **processed with alkali").**  Unsweetened baking Cocoa is typically rendered in one of two forms:

12   Unalkalized Cocoa or a version known as alkalized or Dutch-process Cocoa.  Unalkalized Cocoa is

13   light in color and somewhat acidic with a strong chocolate flavor.  Alkalized Cocoa is processed

14   with an alkali to neutralize its acidity making it slightly milder in taste, with a deeper and warmer

15   color than unalkalized Cocoa.  In order for Cocoa to be used in its alkalized form, a Dutching or

16   alkalization takes place during the processing of the Cocoa beans.  During this process an alkali –

17   usually either Potassium Carbonate or Sodium Carbonate[20] – is suspended in water to neutralize

18   acids and alter the pH level of the beans.  This alkalizing agent darkens the Cocoa, makes it milder

19   in flavor and increases its dispersability.  The FDA requires that "when any optional alkali

20   ingredient" is used, "the name of the food shall be accompanied by the statement 'Processed with

21   alkali', or 'Processed with ------', the blank being filled in with the common or usual name of the

22   specific alkali ingredient used in the food."  21 C.F.R. § 163.112(c)(1).  Balance Bar's Nutrition

23   Energy Bars that list the ingredient as "cocoa (processed with alkali)" or "cocoa powder processed

24   with alkali" without identifying the alkalizing agent are processed with Potassium Carbonate, a

25

26   [20] Besides the commonly used Potassium Carbonate and Sodium Carbonate, there are other less
    commonly used Alkali substances approved for use in processing Cocoa not listed herein that are
27   identified at 21 C.F.R. §  163.112(b)(1).  Significantly, Sodium Carbonate and Sodium Bicarbonate
    appear to be the only "safe and suitable" non-synthetic alkali substances approved for use in
28   alkalizing Cocoa.  *Id.*  Compare 7 C.F.R. § 205.605.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

recognized synthetic ingredient by regulation.[21]   7 C.F.R. § 205.605(b).   Significantly, the other commonly used alkali in making alkalized cocoa – Sodium Carbonate – is a recognized non-synthetic, natural substance.   7 C.F.R. § 205.605(a).   Cocoa processed with Potassium Carbonate is in twelve (12) of Balance Bar's Nutrition Energy Bars at issue in this action.   *See* paragraph 41, *infra.*

        25.   **Potassium Iodide.**  Potassium Iodide is the inorganic salt of iodine.   Stable iodine is an important chemical used by the body to make thyroid hormones.   As a medicine, Potassium Iodide can be used to protect the thyroid in a radiation exposure, to treat certain overactive thyroid conditions, or to loosen and break up mucus in the airways.   It is sometimes added to food such as table salt to add iodine to the diet.   Potassium Iodide is produced by combining potassium hydroxide with iodine, and is a recognized synthetic chemical by federal regulation.   7 C.F.R. § 205.605(b). Sixteen (16) of Balance Bar's Nutrition Energy Bars at issue in this action include Potassium Iodide. *See* paragraph 41, *infra.*

        26.   **Pyridoxine Hydrochloride.**  Pyridoxine Hydrochloride is a synthetic version of one component of vitamin B6 (a/k/a pyridoxine).   Natural vitamin B6 works as a coenzyme to assist other enzymes function properly and as an enzyme for the production of amino acids through three components, pyrodixine, pyridoxal, and pyridoxamine.   Although the predominant biologically active component of Vitamin B6 is pyridoxal, companies utilize pyridoxine to make synthetic vitamin B6 supplements because it is the least expensive to produce commercially.   Pyridoxine Hydrochloride is recognized to be "prepared by chemical synthesis," a/k/a is synthetic, by federal regulation (*see* 21 C.F.R. § 184.1676), and has been linked to various neurological problems at high doses.   Pyrodoxine Hydrochloride is in each of Balance Bar's eighteen (18) Nutrition Energy Bars at issue in this action.   *See* paragraph 41, *infra.*

---

[21]   To the extent Balance Bar may claim some of its products may have to some degree used alkalized cocoa processed with one or more of these less commonly used alkali substances, it is believed and therefore averred by Plaintiff that Balance Bar's Nutrition Energy Bars did not contain alkalized cocoa processed with one of the non-synthetic alkali substances, and instead contained alkalized cocoa processed with one of the synthetic alkali substances.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

27.     **Sodium Citrate.**  Sodium citrate is the sodium salt of citric acid made by reacting sodium carbonate with citric acid and is often used as an anticoagulant (blood thinner).  It is a recognized synthetic under federal regulation (7 C.F.R. § 205.605(b)) that is sometimes used in food as a preservative or to provide a tart flavor in soft drinks, club soda, juices, and in some sausages.  Sodium Citrate is in five (5) of Balance Bar's Nutrition Energy Bars at issue in this action.  *See* paragraph 41, *infra*.

28.     **Tocopherols.**  Natural vitamin E is an essential vitamin complex of eight components four different tocopherols and four different tocotrienols – that functions best when in the proper ratio of components.  Tocopherols in isolation, sometimes called mixed Tocopherols, are a class of chemical compounds with some vitamin E properties used as a chemical food preservative (21 C.F.R. § 182.3890) and recognized to be synthetic by federal regulation. 7 C.F.R. § 205.605(b).  To provide some health benefits of vitamin E, companies often use synthetic or artificial Tocopherols in lieu of natural vitamin E due to their lower cost.  One example of a specific artificial vitamin E used by Balance Bar is Alpha-Tocopheryl Acetate which has been chemically modified to make the tocopherol less acidic and increase its shelf life.  *See* 21 C.F.R. § 184.1890 (dl-α-Tocopherol "is chemically synthesized by condensing racemic isophytol with trimethyl hydroquinone").  Tocopherols are included in twelve (12) of Balance Bar's Nutrition Energy Bars, and Alpha Tocopherol Acetate is included in all eighteen (18) of Balance Bar's Nutrition Energy Bars at issue in this action.  *See* paragraph 41, *infra*.

29.     As explained in the next section of this Second Amended Complaint, Balance Bar's "All Natural" Nutrition Energy Bars have throughout the Class Period used one or more of the aforementioned artificial and/or synthetic ingredients, but its labeling never disclosed they were synthetic ingredients despite the "All Natural" representation on its Nutrition Energy Bars' labels.

## BALANCE BAR'S USE OF NON-NATURAL INGREDIENTS

30.     American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet so they frequently take nutrition information into consideration in selecting and purchasing food items.   Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers that they can and do use to make purchasing decisions.  As noted

by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

31.    The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions.  The results of the FDA's recent Food Label and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

32.    American consumers are increasingly seeking "All Natural" ingredients in the foods they purchase.  Although this segment of the health food market was once a niche market, natural foods are increasingly becoming part of the mainstream food landscape.  According to *Natural Foods Merchandiser*, a leading information provider for the natural, organic and healthy products industry, the natural food industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in 2009.[22]  The market for all natural and organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.[23]  Consumer demand for all natural and organic foods is expected to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015.[24]

33.    Consumers desire "All Natural" ingredients in food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food. The "All Natural" branding also appears to appeal to individual consumers' interest in supporting

---

[22] *See Natural and Organic Products Industry Sales Hit $81 Billion*, Natural Foods Merchandiser, (June 1, 2011), available at:  http://www.prnewswire.com/news-releases/natural-and-organic-products-industry-sales-hit-81-billion-122958763.html and attached hereto as Exhibit 8.

[23]    http://www.marketwire.com/press-release/natural-and-organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited March 2, 2012) attached hereto as Exhibit 9.

[24] *Id.*

1   sustainable living and environmentally sensitive food consumption, helping the environment,

2   assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and

3   hazardous substances, and financially supporting the companies that share these values.  As a result,

4   consumers are willing to pay a higher price for "All Natural" and organic foods and beverages.

5          34.    According to an article in The Economist, "natural" products are a fast growing

6   market because of the power of "mother nature" in the hands of marketers, which conjures up

7   images of heart-warming wholesomeness and rustic simplicity.  According to this publication, a

8   chief selling point of the organic-food industry is that no man-made chemicals are used in the

9   production process.[25]

10         35.    In order to capture and tap into this growing market and the hunger of consumers for

11  the perceived healthier, chemical-free benefits of "All Natural" foods, Balance Bar labels and

12  advertises its Nutrition Energy Bars as being "All Natural."

13         36.    A reasonable consumer's understanding of the term "natural" comports with federal

14  regulators and common meaning.  That is, a reasonable consumer understands the term "natural" to

15  mean that none of the ingredients are synthetic and none of the ingredients are artificial.  When the

16  term "natural" is broadened to "All Natural" as Balance Bar did, there is no question that a

17  reasonable consumer understands the term "All Natural" to mean that none of the ingredients are

18  synthetic and none of the ingredients are artificial.  In other words, by claiming that Balance Bar's

19  Nutrition Energy Bars are "All Natural," Balance Bar raised the bar and both warranted and

20  represented to consumers that these Nutrition Energy Bars contain only natural ingredients, and that

21  none of the components of these Nutrition Energy Bars is artificial or synthetic.

22         37.    Consumers lack the meaningful ability to test or independently ascertain the

23  truthfulness of food labeling claims such as "all natural," especially at the point of sale.  Consumers

24  would not know the true nature of the ingredients merely by reading the ingredient label; its

25  discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond

26

27  _____

28  [25] *Chemical Blessings: What Rousseau got Wrong*, The Economist, (February 4, 2008) available at: http://www.economist.com/node/10633398 and attached hereto as Exhibit 10.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

1   that of the average consumer.  Thus, reasonable consumers must and do rely on food companies such

2   as Balance Bar to honestly report the nature of a food's ingredients, and food companies such as

3   Balance Bar intend and know that consumers rely upon food labeling statements in making their

4   purchasing decisions.  Such reliance by consumers is eminently reasonable since food companies are

5   prohibited from making false or misleading statements on their products under federal law.

6       38.     While Balance Bar labeled and advertised its Nutrition Energy Bars as "All Natural,"

7   the Nutrition Energy Bars labeled as "All Natural" contained artificial and/or synthetic ingredients,

8   including, but not limited to, the ingredients identified above in paragraphs 20 through 28.[26]  While

9   the Balance Bar's Nutrition Energy Bars' labels did disclose that these products contained many of

10  the synthetic and artificial substances, the labels did not disclose that these ingredients were

11  synthetic or artificial, and in some cases did not identify that these components existed in Balance

12  Bar's Nutrition Energy Bars at all (e.g., Potassium Carbonate).  These omissions are significant and

13  material given the "All Natural" representation on the Nutrition Energy Bars' labels.  Based on the

14  "All Natural" representations, one would normally expect that none of the ingredients in "All

15  Natural" Nutrition Energy Bars would be synthetic or artificial.

16      39.     Balance Bar knew that it made the "All Natural" representation in regard to its

17  Nutrition Energy Bars, as the statement appears on the Nutrition Energy Bars' packaging.  Balance

18  Bar also knew that this claim was false and misleading, because it knew what ingredients were

19  contained in each of the Nutrition Energy Bars and had the ability to know, and did know, that many

20  of the ingredients in the Nutrition Energy Bars were artificial and/or synthetic.  Indeed, all of the

21  ingredients at issue in the Nutrition Energy Bars labeled "All Natural" are recognized as synthetic

22  chemicals by federal regulations.

23      40.     Balance Bar's Nutrition Energy Bars labeled as "All Natural" contain synthetic

24  ingredients as identified above. While Balance Bar's "All Natural" Nutrition Energy Bars' labels did

---

[26] In the event discovery of this action reveals additional Balance Bar "All Natural" Nutrition Energy Bars that contain synthetic or artificial ingredients, or reveals that those Balance Bar "All Natural" Nutrition Energy Bars identified herein contain additional synthetic or artificial ingredients not identified in this Second Amended Complaint, Plaintiff reserves the right to amend her allegations to include such additional products and/or ingredients.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

disclose that they contained these ingredients,[27] those labels did not disclose that these ingredients were synthetic. This omission is significant and material given Balance Bar's "All Natural" representation on the Nutrition Energy Bars' labels. Based on the "All Natural" representation, one would normally expect that none of the ingredients in Balance Bar's Nutrition Energy Bars would be synthetic or artificial.

41. According to its labels, Balance Bar's Nutrition Energy Bars labeled as "All Natural" contain the recognized synthetic ingredients identified herein, as follows: [28]

    a. **Balance Bar Almond Brownie**



INGREDIENTS: Protein blend (soy protein isolate, calcium caseinate, casein, whey protein isolate, partially hydrolyzed milk protein isolate), fructose, **cocoa (processed with alkali)**, almonds, water, sugar, fractionated palm kernel oil, **glycerine**, high oleic sunflower oil. Contains less than 2% of soy lecithin, nonfat milk, natural flavor, salt, whey, maltodextrin, soybean oil, **tocopherols** added to protect flavor.

Vitamins and Minerals: calcium carbonate, **ascorbic acid**, **alpha-tocopherol acetate**, **calcium phosphate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid,

---

[27] Potassium Carbonate that is contained in the alkalized cocoa as described herein was not separately listed on Balance Bars' Nutrition Energy Bars' labels, but was instead identified on the labels as "cocoa (processed with alkali)" or "cocoa powder processed with alkali."

[28] Attached as Exhibit 11 is a table summarizing the artificial and synthetic ingredients included in each of Balance Bar's "All Natural" Nutrition Energy Bars. The pictures of the labels and the list of ingredients for Balance Bar's Nutrition Energy Bars shown herein were taken directly from Balance Bar's website at http://www.balance.com/varieties/ since they depict the labels and packaging at issue in this Second Amended Complaint. The ingredients and vitamins and minerals that are recognized synthetics by federal regulations as described *supra* at paragraphs 20-28 have been bolded.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

b.  **Balance Bar Chocolate Craze**



INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, partially hydrolyzed milk protein isolate, casein, calcium caseinate), fructose, sugar, water, **cocoa (processed with alkali)**, fractionated palm kernel oil, high oleic sunflower oil, nonfat milk. Contains less than 2% of soy lecithin, whey, natural flavor, **glycerine**, salt, maltodextrin, soybean oil.

Vitamins and Minerals: calcium carbonate, **calcium phosphate**, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

c.  **Balance Bar Cookie Dough**



INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, partially hydrolyzed milk protein isolate, casein, calcium caseinate), fructose, glucose syrup, cookies [wheat flour, sugar, canola oil, **cocoa (processed with alkali)**, salt, sodium bicarbonate], sugar, fractionated palm kernel oil, water, nonfat milk, high oleic sunflower oil. Contains less than 2% of natural flavor, butter (cream, salt), lactose, **cocoa (processed with alkali),** soy lecithin, maltodextrin, inulin, dextrose, salt, nonfat yogurt powder (cultured nonfat milk), caramel added for color, **tocopherols** added to protect flavor, soybean oil.

---

17

Vitamins and Minerals: calcium carbonate, **calcium phosphate**, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

d. **Balance Bar Double Chocolate Brownie**



INGREDIENTS: Protein blend (soy protein isolate, calcium caseinate, whey protein isolate, casein, partially hydrolyzed milk protein isolate), fructose, sugar, **cocoa (processed with alkali)**, water, fractionated palm kernel and palm oil, high oleic sunflower oil, **glycerine**. Contains less than 2% of nonfat milk, soy lecithin, natural flavor, whey protein concentrate, salt, whey, maltodextrin, soybean oil, butterfat.

Vitamins and Minerals: **calcium phosphate**, calcium carbonate, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

e. **Balance Bar Honey Peanut**



INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, partially hydrolyzed milk protein isolate, calcium caseinate, casein), fructose, glucose syrup, peanut butter (peanuts), sugar, water, fractionated palm kernel oil, roasted soybeans, honey. Contains less than 2% of **cocoa (processed with alkali)**, dextrose, lactose, soy

lecithin, salt, maltodextrin, natural flavor, **tocopherols** added to protect flavor, soybean oil.

Vitamins and Minerals: calcium carbonate, **ascorbic acid**, **calcium phosphate**, **alphatocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

f.   **Balance Bar Mocha Chip**



INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, casein, partially hydrolyzed milk protein isolate, calcium caseinate), fructose, sugar, water, fractionated palm kernel oil, high oleic sunflower oil, **cocoa (processed with alkali)**, unsweetened chocolate, **glycerine**. Contains less than 2% of soy lecithin, natural flavor, dextrose, cocoa butter, instant coffee, lactose, salt, maltodextrin.

Vitamins and Minerals: calcium carbonate, **calcium phosphate**, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12

g.   **Balance Bar Peanut Butter**



INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, partially hydrolyzed milk protein isolate, calcium caseinate, casein), fructose, glucose syrup,

19

partially defatted peanut flour, peanut butter (peanuts), sugar, water, fractionated palm kernel oil, natural flavor. Contains less than 2% of dextrose, sodium caseinate, salt, caramel added for color, soy lecithin, maltodextrin, **tocopherols** added to protect flavor, soybean oil.

Vitamins and Minerals: calcium carbonate, **ascorbic acid**, **calcium phosphate**, **alphatocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

h. **Balance Bar Yogurt Honey Peanut**



INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, partially hydrolyzed milk protein isolate, calcium caseinate, casein), glucose syrup, fructose, peanut butter (peanuts), roasted soybeans, sugar, fractionated palm kernel oil, dextrose, water, nonfat milk, honey. Contains less than 2% of natural flavor, maltodextrin, nonfat yogurt powder (cultured nonfat milk), soy lecithin, salt, caramel added for color.

Vitamins and Minerals: calcium carbonate, **ascorbic acid**, **alpha-tocopherol acetate**, **calcium phosphate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

i. **Balance Bar Gold Caramel Nut Blast**



INGREDIENTS: Protein blend (soy protein isolate, calcium caseinate, whey protein isolate, casein, partially hydrolyzed milk protein isolate), fructose, glucose syrup, sugar, water, whey protein concentrate, peanut butter (peanuts), fractionated palm kernel and palm oil, partially defatted peanut flour, inulin, natural flavor (includes caramel added for color). Contains less than 2% of cocoa, soy lecithin, **glycerine**, nonfat milk, salt, maltodextrin, heavy cream (cream, milk, cellulose gel, milk solids, carrageenan, cellulose gum), butter (cream, salt, annatto added for color), butterfat, **sodium citrate**, **tocopherols** added to protect flavor, soybean oil, carrageenan, dextrose.

Vitamins and Minerals: **calcium phosphate**, calcium carbonate, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

j. **Balance Bar Gold Chocolate Mint Cookie Crunch**



INGREDIENTS: Soy protein nuggets [soy protein isolate, **cocoa (processed with alkali),** tapioca starch], protein blend (soy protein isolate, calcium caseinate, whey protein isolate, casein), fructose, sugar, fractionated palm kernel and palm oil, **cocoa (processed with alkali)**, glucose syrup, invert sugar, water, high oleic sunflower oil. Contains less than 2% of oligofructose, soy lecithin, maltodextrin, wheat flour, natural flavor, **glycerine**, lactose, whey protein concentrate, dextrose, salt, nonfat milk, canola oil, carrageenan, butterfat, **tocopherols** added to protect flavor, sodium bicarbonate.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

Vitamins and Minerals: calcium carbonate, **calcium phosphate**, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, potassium iodide, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

k. **Balance Bar Gold Chocolate Peanut Butter**



INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, partially hydrolyzed milk protein isolate, casein, calcium caseinate), fructose, peanut butter (peanuts), glucose syrup, water, sugar, whey protein concentrate, fractionated palm kernel and palm oil, partially defatted peanut flour, **cocoa (processed with alkali)**, natural flavor. Contains less than 2% of **glycerine**, maltitol syrup, nonfat milk, soy lecithin, salt, maltodextrin, heavy cream (cream, milk, cellulose gel, milk solids, carrageenan, cellulose gum), butter (cream, salt, annatto added for color), butterfat, **sodium citrate**, soybean oil, **tocopherols** added to protect flavor, carrageenan, dextrose.

Vitamins and Minerals: **calcium phosphate**, calcium carbonate, **ascorbic acid**, **alphatocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

l. **Balance Bar Gold Lemon Meringue Crunch**



---

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

INGREDIENTS: Soy protein nuggets (soy protein isolate, tapioca starch, salt), glucose syrup, protein blend (soy protein isolate, whey protein isolate, calcium caseinate, egg white, enzyme modified soy protein, partially hydrolyzed milk protein isolate, casein), sugar, fractionated palm kernel and palm oil, fructose, invert sugar, calcium caseinate, oligofructose, nonfat milk, wheat flour, **glycerine**, water, high oleic sunflower oil. Contains less than 2% of lemon juice concentrate, invert evaporated cane juice, maltitol syrup, canola oil, natural flavor, soy lecithin, maltodextrin, whole wheat flour, whole wheat graham flour, nonfat yogurt powder (cultured nonfat milk), citrus fiber, pectin, citric acid, soybean and palm oil, potassium lactate, salt, dextrose, sodium bicarbonate, carrageenan, molasses, honey, caramel added for color, turmeric oleoresin added for color.

Vitamins and Minerals: **calcium phosphate**, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

m. **Balance Bar Gold S'mores**



INGREDIENTS: Soy protein nuggets (soy protein isolate, tapioca starch, salt), protein blend (soy protein isolate, whey protein isolate, calcium caseinate, egg white, enzyme modified soy protein, casein, partially hydrolyzed milk protein isolate), glucose syrup, sugar, fractionated palm kernel and palm oil, whey protein concentrate, fructose, invert sugar, oligofructose, water, **cocoa (processed with alkali)**, high oleic sunflower oil, **glycerine**. Contains less than 2% of natural flavor, ground corn, whole wheat flour, soy lecithin, invert evaporated cane juice, nonfat milk, maltitol syrup, brown sugar, maltodextrin, citrus fiber, salt, pectin, butterfat, potassium lactate, wheat starch, honey, sodium bicarbonate, soybean oil, carrageenan, **tocopherols** added to protect flavor.

Vitamins and Minerals**: calcium phosphate**, **ascorbic acid, alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

1

2

3

4

5

6

7

n.  **Balance Bar Gold Triple Chocolate Chaos**



8  INGREDIENTS: Protein blend (soy protein isolate, whey protein isolate, calcium

9  caseinate, casein, partially hydrolyzed milk protein isolate), fructose, glucose syrup,
sugar, **cocoa (processed with alkali)**, fractionated palm kernel oil, water, invert

10  evaporated cane juice, milk protein concentrate, high oleic sunflower oil, **glycerine**,
soy lecithin. Contains less than 2% of natural flavor, nonfat milk, whey protein

11  concentrate, maltitol syrup, salt, maltodextrin, unsweetened chocolate, heavy cream
(cream, milk, cellulose gel, milk solids, carrageenan, cellulose gum), butter (cream,

12  salt, annatto added for color), **sodium citrate**, **tocopherols** added to protect flavor,
soybean oil, carrageenan, dextrose.

13

14  Vitamins and Minerals: calcium carbonate, **ascorbic acid**, **calcium phosphate,
alpha-tocopherol acetate,** ferric orthophosphate, niacinamide, zinc oxide, copper

15  gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine
hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid,

16  biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin
D3, vitamin B12.

17

18  o.  **Balance Bar Bare Sweet & Salty Chocolate Almond**

19

20



21

22

23

24  INGREDIENTS: Protein blend (soy nuggets (soy protein isolate, tapioca starch, salt),

25  whey protein isolate, soy protein isolate), organic agave syrup, granola (rolled oats,
sugar, canola oil, honey, molasses), almonds, brown rice syrup, inulin/oligofructose,

26  sugar, palm kernel and palm oil, rolled oats, sunflower seeds, almond butter. Contains
less than 2% of water, **cocoa powder processed with alkali**, natural flavors, salt, soy

27  lecithin, caramel color, natural mixed tocopherols.

28

Vitamins and Minerals: **tricalcium phosphate**, magnesium oxide, calcium carbonate, **ascorbic acid**, sodium ascorbate, **dl-Alpha tocopheryl acetate**, niacinamide, vitamin A palmitate, zinc oxide, biotin, calcium D-pantothenate, cyanocobalamin, phytonadione, **pyridoxine hydrochloride**, thiamine mononitrate, riboflavin, chromium amino acid chelate, folic acid, sodium selenite.

p. **Balance Bar Bare Sweet & Salty Peanut Butter**



INGREDIENTS: Protein blend (soy nuggets (soy protein isolate, tapioca starch, salt), whey protein isolate, soy protein isolate, whey powder), organic agave syrup, granola (rolled oats, sugar, canola oil, honey, molasses), peanuts, brown rice syrup, inulin/oligofructose, peanut flour, sugar, palm kernel and palm oil, rolled oats, peanut butter. Contains less than 2% of natural flavors, water, salt, caramel color, soy lecithin, natural mixed tocopherols.

Vitamins and Minerals: **tricalcium phosphate**, magnesium oxide, calcium carbonate, **ascorbic acid**, sodium ascorbate, **dl-Alpha tocopheryl acetate**, niacinamide, vitamin A palmitate, zinc oxide, biotin, **calcium D-pantothenate**, cyanocobalamin, phytonadione, **pyridoxine hydrochloride**, thiamine mononitrate, riboflavin, chromium amino acid chelate, folic acid, sodium selenite

q. **Balance Bar Café Cinnamon Bun**



INGREDIENTS: Soy protein nuggets (soy protein isolate, tapioca starch, salt), protein blend (soy protein isolate, calcium caseinate, whey protein isolate, casein), glucose syrup, fructose, sugar, fractionated palm kernel oil, nonfat milk, invert sugar, water, high oleic sunflower oil. Contains less than 2% of soy lecithin, cinnamon, enriched flour (wheat flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid), oat fiber, natural flavor, maltodextrin, oligofructose, oats,

nonfat yogurt powder (cultured nonfat milk), soybean and palm oil, whole wheat graham flour, salt, dextrose, whey protein concentrate, caramel added for color, **glycerine**, heavy cream (cream, milk, cellulose gel, milk solids, carrageenan, cellulose gum), butter (cream, salt, annatto added for color), sodium bicarbonate, **sodium citrate**, carrageenan.

Vitamins and Minerals: calcium carbonate, **calcium phosphate**, **ascorbic acid**, **alpha-tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

r.   **Balance Bar Café Chocolate Almond Biscotti**



INGREDIENTS: Soy protein nuggets [soy protein isolate, tapioca starch, **cocoa (processed with alkali)**, salt, calcium carbonate], protein blend (soy protein isolate, calcium caseinate, whey protein isolate, casein), fructose, glucose syrup, sugar, fractionated palm kernel oil, invert sugar, almonds, water, nonfat milk, **cocoa (processed with alkali)**. Contains less than 2% of natural flavor (includes sesame oil, turmeric added for color), enriched wheat flour (wheat flour, niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid), soy lecithin, oligofructose, oat fiber, **glycerine**, high oleic sunflower oil, lactose, canola oil, salt, dextrose, maltodextrin, whey protein concentrate, heavy cream (cream, milk, cellulose gel, milk solids, carrageenan, cellulose gum), butter (cream, salt, annatto added for color), sodium bicarbonate, nonfat yogurt powder (cultured nonfat milk), **sodium citrate**, carrageenan.

**Vitamins and Minerals:** calcium carbonate, **calcium phosphate**, **ascorbic acid**, **alpha- tocopherol acetate**, ferric orthophosphate, niacinamide, zinc oxide, copper gluconate, **calcium pantothenate**, manganese sulfate, vitamin A acetate, **pyridoxine hydrochloride**, riboflavin, thiamine mononitrate, chromium chloride, folic acid, biotin, **potassium iodide**, sodium molybdate, sodium selenite, phytonadione, vitamin D3, vitamin B12.

42.     The labeling of products as "All Natural" carries implicit health benefits important to consumers – benefits that consumers are often willing to pay a premium for over comparable products that are not "All Natural."  Balance Bar has cultivated and reinforced a corporate image that has catered to this "All Natural" theme and has boldly emblazed this claim on its Nutrition Energy Bars identified above, despite the fact Balance Bar uses artificial and synthetic ingredients.

43.     Balance Bar has used the "All Natural" label to shape its brand and sell its Nutrition Energy Bars.  Yet, Balance Bar used synthetic or artificial ingredients, but nonetheless labeled its Nutrition Energy Bars as "All Natural."  The existence of artificial or synthetic ingredients in its Nutrition Energy Bars renders the use of the label "All Natural," false and misleading.

## BALANCE BAR HAS REFUSED TO CEASE ITS WRONGDOING

44.     Balance Bar has been notified by Plaintiff on behalf of herself and all class members that Balance Bar's Nutrition Energy Bars have been falsely and misleadingly labeled as "All Natural" when they in fact contain numerous synthetic substances.  Balance Bar was sent an initial notice by letter from Plaintiff dated August 30, 2011, and a supplemental letter dated November 18, 2011.  These letters placed Balance Bar on notice that all of its Nutrition Energy Bars labeled "All Natural" contained the non-natural ingredients complained of herein, and requested that Balance Bar cure or otherwise remedy the harm to Plaintiff and all Class members.

45.     Balance Bar responded by letter dated December 19, 2011, indicated that it made the decision to remove the "All Natural" statement from its Nutrition Energy Bars' labels, but did not offer to or refund monies paid for its Nutrition Energy Bars, or take any other action to repair or rectify the problems associated with its illegal behavior set forth herein or promise to do so with respect to those persons, such as Plaintiff and the Class, who purchased its supposedly "All Natural" Nutrition Energy Bars that in fact contained non-natural, synthetic ingredients.

46.     Despite having a reasonable opportunity to cure or otherwise remedy the harms to Plaintiff and Class members caused by its false and misleading representations, Balance Bar has failed to do so.

1    **BALANCE BAR FRAUDULENTLY CONCEALED ITS WRONGDOING**

2         47.    Balance Bar's Nutrition Energy Bars labeled as "All Natural" contain artificial and/or

3    synthetic ingredients as identified above.  Balance Bar did not disclose the identity of Potassium

4    Carbonate as an ingredient on the Nutrition Energy Bars' labels it is contain in.  A reasonably

5    prudent consumer buying Balance Bar's Nutrition Energy Bars would have no reason to suspect that

6    the "All Natural" labeled Nutrition Energy Bars contained synthetic Potassium Carbonate.

7         48.    Moreover, while Balance Bar's "All Natural" Nutrition Energy Bars' labels did

8    include the following in the ingredient list: Ascorbic Acid, Calcium Pantothenate, Calcium

9    Phosphate, Glycerine, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha

10   Tocopherol Acetate and/or Tocopherols, those labels did not disclose that any of these ingredients

11   were artificial or synthetic, and therefore not natural.  Nor did Balance Bar otherwise disclose this

12   information to Plaintiff or members of the Class.

13        49.    Whether Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine,

14   Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate and/or

15   Tocopherols are artificial, synthetic or natural is not something Plaintiff or any other average

16   reasonable consumer buying Balance Bar's "All Natural" Nutrition Energy Bars would know since

17   that information is not common knowledge.  That, combined with Balance Bar's active concealment

18   in representing the Nutrition Energy Bars as "All Natural" and not disclosing otherwise, gave the

19   average reasonable consumer no reason to suspect that Balance Bar's representations on the

20   packages that the Nutrition Energy Bars are "All Natural" were not true, and therefore consumers

21   had no reason to investigate whether these ingredients are artificial, synthetic or natural.

22        51.    As such, Balance Bar concealed the non-natural nature of the ingredients in its

23   Nutrition Energy Bars.

24                              **CLASS ACTION ALLEGATIONS**

25        50.    Plaintiff brings this action on behalf of herself and on behalf of all other members of

26   the Class ("Class"), defined as all persons who, on or after December 1, 2009, purchased in the

27   United States Balance Bar's Nutrition Energy Bars that were labeled "All Natural" but contained

28

---

non-natural ingredients.[29]   Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3).

51.   Excluded from the Class are: (i) Balance Bar and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

52.   Upon information and belief, there are tens of thousands of Class members who are geographically dispersed throughout the United States.   Therefore, individual joinder of all members of the Class would be impracticable.

53.   Common questions of law or fact exist as to all members of the Class.   These questions predominate over the questions affecting only individual class members.   These common legal or factual questions include:

    a.   Whether Balance Bar labels its Nutrition Energy Bars as "All Natural;"

    b.   whether the statement "All Natural" on Balance Bar's Nutrition Energy Bars creates an express warranty that the products are made from all natural ingredients under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.;

    c.   whether Balance Bar's Nutrition Energy Bars that contain Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Potassium Carbonate, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate, Tocopherols or other synthetic or artificial ingredients are "All Natural";

    d.   whether Balance Bar's "All Natural" labeling of its Nutrition Energy Bars is likely to deceive class members or the general public;

    e.   whether Balance Bar's representations are unlawful; and

    f.   the appropriate measure of damages, resitutionary disgorgement and/or restitution.

54.   Plaintiff's claims are typical of the claims of the Class in that Plaintiff was a consumer who purchased Balance Bar's "All Natural" Nutrition Energy Bars in the United States

---

[29] If a nationwide class is not certified for any claim, Plaintiff reserves the right, in the alternative, to seek class certification of one or more multi-state classes as well as a California-wide or other statewide sub-class against Balance Bar.

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

1    that contained non-natural ingredients during the Class Period.  Plaintiff, therefore, is no different in

2    any relevant respect from any other Class member, and the relief sought is common to the Class.

3        55.    Plaintiff is an adequate representative of the Class because her interests do not

4    conflict with the interests of the Class members she seeks to represent, and she has retained counsel

5    competent and experienced in conducting complex class action litigation, including food mislabeling

6    class actions such as this one.  Plaintiff and her counsel will adequately protect the interests of the

7    Class.

8        56.    A class action is superior to other available means for the fair and efficient

9    adjudication of this dispute.  The damages suffered by each individual class member likely will be

10   relatively small, especially given the relatively small cost of the Nutrition Energy Bars at issue and

11   the burden and expense of individual prosecution of the complex litigation necessitated by Balance

12   Bar's conduct.  Thus, it would be virtually impossible for Class members individually to effectively

13   redress the wrongs done to them.  Moreover, even if Class members could afford individual actions,

14   it would still not be preferable to class-wide litigation.  Individualized actions present the potential

15   for inconsistent or contradictory judgments.   By contrast, a class action presents far fewer

16   management difficulties and provides the benefits of single adjudication, economies of scale, and

17   comprehensive supervision by a single court.

18       57.    In the alternative, the Class may be certified because Balance Bar has acted or refused

19   to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final

20   equitable relief with respect to the Class.

21                          **FIRST CAUSE OF ACTION**
                 **(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301,** *et seq.***)**
22                 **Violation of Written Warranty Under Federal Law)**

23       58.    Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint

24   and restates them as if they were fully set forth herein.  This claim is brought by Plaintiff on behalf

25   of herself and the Class solely for breach of federal law.  This claim is not based on any violation of

26   state law.

27       59.    The MMWA, 15 U.S.C. §§ 2301, *et seq.*, creates a private federal cause of action for

28   breach of a "written warranty" as defined by the Act.  15 U.S.C. § 2301(6) and § 2310(d)(1).

60.     Balance Bar's Nutrition Energy Bars are "consumer products" as that term is defined by 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

61.     Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3), since they are buyers of Balance Bar's Nutrition Energy Bars for purposes other than resale.

62.     Balance Bar is an entity engaged in the business of making its Nutrition Energy Bars available, either directly or indirectly, to consumers such as Plaintiff and the Class.   As such, Balance Bar is a "supplier" as defined in 15 U.S.C. § 2301(4).

63.     Through its labeling, Balance Bar gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in Balance Bar's Nutrition Energy Bars.   As a result, Balance Bar is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

64.     Balance Bar provided a "written warranty" within the meaning of 15 U.S.C. § 2301(6) for the Nutrition Energy Bars by identifying the ingredients in the ingredients list on each of the Nutrition Energy Bars, and then prominently affirming and promising in writing on the labeling of the Nutrition Energy Bars that they were "All Natural" as described in this Second Amended Complaint.   This affirmation of fact regarding the nature and qualities of the ingredients in the Nutrition Energy Bars constituted, and was intended to convey to purchasers, a written promise that the ingredients in the Nutrition Energy Bars were free of a particular type of defect (i.e., that they were not synthetic or artificial).   As such, these written promises and affirmations were part of the basis of Plaintiff's and the Class' bargain with Balance Bar in purchasing the Nutrition Energy Bars.

65.     Balance Bar breached its written warranty by failing to provide and supply Nutrition Energy Bars containing only non-synthetic, non-artificial ingredients.   Since the ingredients in the Nutrition Energy Bars did not have the requisite qualities and character promised by Balance Bar's written warranties, the Nutrition Energy Bars were therefore not defect free, and did not comply with Balance Bar's obligation under the written warranty to supply "All Natural" Nutrition Energy Bars to Plaintiff and the Class.

66.     Balance Bar was provided notice and a reasonable opportunity to cure the defects in the Nutrition Energy Bars and remedy the harm to Plaintiff and the Class, but failed to do so, as set forth above in paragraphs 44-46.

67.     Plaintiff and members of the Class were injured by Balance Bar's failure to comply with its obligations under the written warranties, since Plaintiff and members of the Class paid for nutrition energy bars that did not have the promised qualities and nature, did not receive the non-artificial, non-synthetic, defect-free nutrition bars that were promised to them and that they bargained for, paid a premium for Balance Bar's Nutrition Energy Bars when they could have instead purchased other less expensive alternative nutrition energy bars, and lost the opportunity to purchase other, truly all-natural nutrition bars that would provide the type of non-synthetic ingredients promised and warranted by Balance Bar but which Balance Bar's Nutrition Energy Bars failed to provide or were incapable of providing.

68.     Plaintiff and the Class therefore for this claim seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

## SECOND CAUSE OF ACTION
### (Common Law Fraud)

69.     Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint and restates them as if they were fully written herein.

70.     Balance Bar uniformly misrepresented on its Nutrition Energy Bars' labels during the Class Period that the Nutrition Energy Bars were "All Natural," when in fact they contain artificial and synthetic ingredients, including, but not limited to: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Potassium Carbonate, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate and Tocopherols.  While Balance Bar's "All Natural" Nutrition Energy Bars' labels did uniformly disclose during the Class Period that they contained

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

these ingredients,[30] the labels uniformly did not disclose during the Class Period that these ingredients are artificial or synthetic or disclose generally that the Nutrition Energy Bars contained ingredients that are synthetic or artificial.

71.     Thus, the claim on Balance Bar's labels that the Nutrition Energy Bars were "All Natural" constitutes an affirmative act of concealment and non-disclosure since Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Potassium Carbonate, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate and Tocopherols are artificial and/or synthetic ingredients.  Balance Bar had a duty to disclose this material information in light of its representation on its labels that its Nutrition Energy Bars were "All Natural."

72.     Balance Bar's "All Natural" statements and representations and its affirmative concealments and omissions described herein were material in that there was a substantial likelihood that a reasonable prospective purchaser of its Nutrition Energy Bars would have considered them important when deciding whether or not to purchase the Nutrition Energy Bars.

73.     Balance Bar knew or recklessly disregarded that its Nutrition Energy Bars were not "All Natural," and uniformly misrepresented its Nutrition Energy Bars as "All Natural" and affirmatively concealed and omitted the truth with the intent and purpose of inducing consumers (i.e., Plaintiff and Class members) to purchase its Nutrition Energy Bars.

74.     Balance Bar  failed to disclose, misrepresented and/or concealed the foregoing material facts from Plaintiff and the Class knowing that these facts may have justifiably induced them to refrain from purchasing Balance Bar's Nutrition Energy Bars and instead purchase another manufacturer's Nutrition Energy Bars that were actually all natural, or to purchase a less expensive non-natural substitute product.

75.     As set forth in paragraph 7 of this Second Amended Complaint, Plaintiff relied upon Balance Bar's "All Natural" representations on its Nutrition Energy Bars' labels as a material basis

---

[30] The Potassium Carbonate contained in the alkalized cocoa as described herein was not separately listed on Balance Bars' Nutrition Energy Bars' labels, but was instead identified on the labels as "cocoa (processed with alkali)" or "cocoa powder processed with alkali" as shown in paragraph 41, *supra*.

for her decision to purchase Balance Bar's Nutrition Energy Bars.  Moreover, based on the very materiality of Balance Bar's misrepresentations, concealments and omissions uniformly made on or omitted from its Nutrition Energy Bars' labels, Class members' reliance on those misrepresentations, concealments and omissions as a material basis for their decision to purchase Balance Bar's Nutrition Energy Bars may be presumed or inferred for all members of the Class.

76.     Balance Bar carried out the scheme set forth in this Second Amended Complaint willfully, wantonly and with reckless disregard for the interests of Plaintiff and the Class.

77.     By reason of the foregoing, Plaintiff and members of the Class have been injured by purchasing Nutrition Energy Bars represented to be "All Natural" which were not, and/or by paying a premium for those supposedly "All Natural" Nutrition Energy Bars over less expensive non-natural alternatives.  Plaintiff and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

### THIRD CAUSE OF ACTION
#### ("Unlawful" Business Practices in Violation of
#### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

78.     Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint and restates them as if they were fully written herein.

79.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

80.     A business act or practice is "unlawful" if it violates any established state or federal law.

81.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Article 6, § 110660 provides that: "Any food is misbranded if its labeling is false or misleading in any particular."

82.      Balance Bar has violated, and continues to violate the Sherman Law, Article 6, § 110660, and hence has also violated and continues to violate the "unlawful" prong of the UCL, through its use of the term "All Natural" on the labels of its Nutrition Energy Bars that contain

artificial and/or synthetic ingredients including, but not limited to, Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Potassium Carbonate, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate or Tocopherols.  Balance Bar's identical conduct also violates the Sherman Law also violates the FDCA § 403(a)(1), 21 U.S.C. § 343(a)(1), which declares food mislabeled under federal law if "its labeling is false or misleading in any particular."   This identical conduct also serves as the sole factual basis of each cause of action brought by this Second Amended Complaint, and Plaintiff does not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate FDCA § 403(a)(1).

83.    The MMWA also makes the breach of either a "written warranty" or an "implied warranty" of merchantability a violation of federal law.  15 U.S.C. § 2310(d).  Balance Bar violated, and continues to violate the MMWA as alleged in the First Cause of Action, and hence has also violated, and continues to violate, the "unlawful" prong of the UCL through its use of the term "All Natural" on the labels of its Nutrition Energy Bars that contain artificial and/or synthetic ingredients including, but not limited to, Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Potassium Carbonate, Potassium Iodide, Pyridoxine Hydrochloride, Sodium Citrate, Alpha Tocopherol Acetate or Tocopherols.

84.    By committing the acts and practices alleged above, Balance Bar has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

85.    Through its unlawful acts and practices, Balance Bar has obtained, and continues to unfairly obtain, money from members of the Class.  As such, Plaintiff requests that this Court cause Balance Bar to restore this money to Plaintiff and all Class members, to disgorge the profits Balance Bar made on these transactions, and to enjoin Balance Bar from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein.  Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

1

2

**FOURTH CAUSE OF ACTION**
**("Unfair" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

3      86.     Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint

4   and restates them as if they were fully written herein.

5      87.     The UCL defines unfair business competition to include any "unlawful, unfair or

6   fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal.

7   Bus. Prof. Code § 17200.

8      88.     A business act or practice is "unfair" under the UCL if the reasons, justifications and

9   motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

10      89.     Balance Bar has and continues to violate the "unfair" prong of the UCL through its

11   misleading description of its Nutrition Energy Bars as "All Natural" when indeed one or more

12   ingredients in each of the Nutrition Energy Bars is artificial or synthetic.  The gravity of the harm to

13   Plaintiff and members of the Class resulting from such unfair acts and practices outweighs any

14   conceivable reasons, justifications and/or motives of Balance Bar for engaging in such deceptive acts

15   and practices.  By committing the acts and practices alleged above, Balance Bar has engaged, and

16   continues to be engaged, in unfair business practices within the meaning of California Business and

17   Professions Code §§ 17200, *et seq.*

18      90.     Through its unfair acts and practices, Balance Bar has obtained, and continues to

19   unfairly obtain, money from members of the Class.  As such, Plaintiff requests that this Court cause

20   Balance Bar to restore this money to Plaintiff and all Class members, to disgorge the profits Balance

21   Bar has made on its Nutrition Energy Bars, and to enjoin Balance Bar from continuing to violate the

22   UCL or violating it in the same fashion in the future as discussed herein.  Otherwise, the Class may

23   be irreparably harmed and/or denied an effective and complete remedy if such an order is not

24   granted.

25

26

**FIFTH CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

27      91.     Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint

28   and restates them as if they were fully written herein.

92.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

93.     A business act or practice is "fraudulent" under the UCL if it actually deceives or is likely to deceive members of the consuming public.

94.     Balance Bar's acts and practices of mislabeling its Nutrition Energy Bars as "All Natural" despite the fact that they contain artificial and/or synthetic ingredients has the effect of misleading consumers into believing the products are something they are not.

95.     As a result of the conduct described above, Balance Bar has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the Class.  Specifically, Balance Bar has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of Balance Bar's Nutrition Energy Bars.

96.     Through its unfair acts and practices, Balance Bar has improperly obtained, and continues to improperly obtain, money from members of the Class.  As such, Plaintiff requests that this Court cause Balance Bar to restore this money to Plaintiff and all Class members, to disgorge the profits Balance Bar has made on its Nutrition Energy Bars, and to enjoin Balance Bar from continuing to violate the UCL or violating it in the same fashion in the future as discussed herein.  Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**SIXTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**

97.     Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint and restates them as if they were fully written herein.  This Cause of Action is brought on behalf of Plaintiff, the Class and the general public.

98.     Balance Bar uses advertising on its packaging to sell its Nutrition Energy Bars.  Balance Bar is disseminating advertising concerning its goods which by its very nature is deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.*, because those advertising statements contained on its Nutrition Energy Bars' labels are

1  misleading and likely to deceive, and continue to deceive, members of the putative Class and the

2  general public.

3      99.    In making and disseminating the statements alleged herein, Balance Bar knew or

4  should have known that the statements were untrue or misleading, and acted in violation of

5  California Business & Professions Code §§ 17500, *et seq.*

6      100.    The misrepresentations and non-disclosures by Balance Bar of the material facts

7  detailed above constitute false and misleading advertising and therefore constitutes a violation of

8  California Business & Professions Code §§ 17500, *et seq.*

9      101.    Through its deceptive acts and practices, Balance Bar has improperly and illegally

10  obtained money from Plaintiff and members of the Class.  As such, Plaintiff requests that this Court

11  cause Balance Bar to restore this money to Plaintiff and members of Class, and to enjoin Balance

12  Bar from continuing to violate California Business & Professions Code §§ 17500, *et seq.* as

13  discussed above.  Otherwise, Plaintiff and those similarly situated will continue to be harmed by

14  Balance Bar's false and/or misleading advertising.

15      102.    Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an order

16  of this Court ordering Balance Bar to fully disclose the true nature of its misrepresentations.

17  Plaintiff additionally requests an order requiring Balance Bar to disgorge its ill-gotten gains and/or

18  award full restitution of all monies wrongfully acquired by Balance Bar by means of such acts of

19  false advertising, plus interest and attorneys fees so as to restore any and all monies which were

20  acquired and obtained by means of such untrue and misleading advertising, misrepresentations and

21  omissions, and which ill-gotten gains are still retained by Balance Bar.  Plaintiff and the Class may

22  be irreparably harmed and/or denied an effective and complete remedy if such an order is not

23  granted.

24      103.    Such conduct is ongoing and continues to this date.  Plaintiff and the Class are

25  therefore entitled to the relief described below.

26

27

28

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

**SEVENTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq.*)**

104.    Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint and restates them as if they were fully written herein.   This Count is brought on behalf of Plaintiff, the Class and the general public.

105.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

106.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

107.    The purchases of Balance Bar's Nutrition Energy Bars by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Nutrition Energy Bars offered by Balance Bar constitute "goods" within the meaning of Civil Code § 1761(a).

108.    Balance Bar has violated, and continues to violate, the CLRA in at least the following respects:

    a.  in violation of Civil Code § 1770(a)(5), Balance Bar represented that its goods (i.e., the Nutrition Energy Bars) had characteristics which they do not have;

    b.  in violation of Civil Code § 1770(a)(7), Balance Bar represented that its goods were of a particular standard, quality or grade, which they are not; and

    c.  in violation of Civil Code § 1770(a)(9), Balance Bar advertised its goods with the intent not to sell them as advertised.

109.    Plaintiff and the members of the Class request that this Court enjoin Balance Bar from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above pursuant to California Civil Code § 1780(a)(2).  Unless Balance Bar is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Balance Bar's "All Natural" Nutrition Energy Bars will be damaged by its acts and practices in the same way as have Plaintiff and the members of the Class.

110.    As set forth in paragraphs 44 through 46, prior to filing this Second Amended Complaint Plaintiff notified Balance Bar in writing of the particular violations of Civil Code § 1770

and demanded that Balance Bar repair or otherwise rectify the problems associated with its illegal behavior detailed above, which actions are in violation of Civil Code § 1770.

111.   Balance Bar failed to adequately respond to Plaintiff's demand within 30 days of Plaintiff's notice pursuant to Civil Code § 1782(b) as Balance Bar did not refund monies paid by Plaintiff or the Class, or take any other action to repair or rectify the problems associated with its illegal behavior as set forth herein, or promise to do so with respect to those persons, such as Plaintiff and the Class, who purchased Balance Bar's supposedly "All Natural" Nutrition Energy Bars that contained non-natural ingredients.   Accordingly, Plaintiff hereby requests damages as provided for in Civil Code § 1780:

        a.   Actual damages in excess of the jurisdictional limits of this Court;

        b.   statutory damages allowable under Civil Code § 1780;

        c.   punitive damages;

        d.   any other relief which the Court deems proper; and

        e.   court costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract)

112.   Plaintiff hereby incorporates all other paragraphs of this Second Amended Complaint as if fully rewritten herein.  Plaintiff pleads this Count in the alternative.

113.   Balance Bar's conduct in enticing Plaintiff and the Class to purchase its Nutrition Energy Bars through its false and misleading packaging as described throughout this Second Amended Complaint is unlawful because the statements contained on its Nutrition Energy Bars' labels are untrue.  Balance Bar took monies from Plaintiff and Class members for Nutrition Energy Bars promised to be "All Natural," even though the Nutrition Energy Bars it sold are not "All Natural" as specified throughout this Second Amended Complaint.  Balance Bar has been unjustly enriched at the expense of Plaintiff and Class members as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Balance Bar to restore these ill-gotten gains to Plaintiff and the Class.

1    114.    As a direct and proximate result of Balance Bar's unjust enrichment, Plaintiff and

2    Class members are entitled to restitution or restitutionary disgorgement in an amount to be proved at

3    trial.

4                                         **PRAYER**

5        WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the

6    Class, and for the Causes of Action so applicable on behalf of the general public, requests award and

7    relief as follows:

8        A.    An order certifying that this action is properly brought and may be maintained as a

9    class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed

10   Counsel for the Class.

11       B.    Restitution in such amount that Plaintiff and all Class members paid to purchase

12   Balance Bar's Nutrition Energy Bars, or paid as a premium over non-natural alternatives, or

13   restitutionary disgorgement of the profits Balance Bar obtained from those transactions, for Causes

14   of Action for which they are available.

15       C.    Compensatory damages for Causes of Action for which they are available.

16       D.    Statutory damages allowable under Civil Code § 1780.

17       E.    Punitive Damages for Causes of Action for which they are available.

18       F.    A declaration and order enjoining Balance Bar from advertising its Nutrition Energy

19   Bars misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other

20   applicable laws as specified in this Second Amended Complaint.

21       G.    An order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and

22   pre and post-judgment interest.

23       H.    An order requiring an accounting for, and imposition of, a constructive trust upon all

24   monies received by Balance Bar as a result of the unfair, misleading, fraudulent and unlawful

25   conduct alleged herein.

26       I.    The prayers for relief requested herein as they pertain to the First Cause of Action (¶¶

27   58-68, herein) do not and shall not be read to exceed the "[d]amages and other legal and equitable

28

---

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH

relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

J.      Such other and further relief as may be deemed necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

DATED:  May 18, 2012

**STEMBER FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**

By:  s/Joseph N. Kravec, Jr.
      Joseph N. Kravec, Jr.
      (admitted *pro hac vice*)

Wyatt A. Lison
Maureen Davidson-Welling
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:  jkravec@stemberfeinstein.com
       wlison@stemberfeinstein.com
       mdavidsonwelling@stemberfeinstein.com

Janet Lindner Spielberg (Bar No. 221926)
**LAW OFFICE OF JANET LINDNER SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone: (310) 392-8801
Fax:   (310) 278-5938
E-Mail: jlspielberg@jlslp.com

Michael D. Braun (Bar No. 167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone:   (310) 836-6000
Fax:      (310) 836-6010
E-Mail: service@braunlawgroup.com

*ATTORNEYS FOR PLAINTIFF*

Second Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief;
Case No.: 4:11-cv-04547-PJH