| | |
|---|---|
| 1 | NORMAN C. HILE (STATE BAR NO. 57299) |
|   | nhile@orrick.com |
| 2 | KATIE C. DEWITT (STATE BAR NO. 244673) |
|   | kdewitt@orrick.com |
| 3 | JOHN W. KILLEEN (STATE BAR NO. 258395) |
|   | jkilleen@orrick.com |
| 4 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|   | 400 Capitol Mall |
| 5 | Suite 3000 |
|   | Sacramento, California  95814-4497 |
| 6 | Telephone:   +1-916-447-9200 |
|   | Facsimile:    +1-916-329-4900 |
| 7 | |
|   | Attorneys for Defendant |
| 8 | BALANCE BAR COMPANY |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KIMBERLY S. SETHAVANISH, a California resident on behalf of herself and all others similarly situated, | Case No. 4:11-cv-04547-PJH |
| Plaintiff, | **DEFENDANT BALANCE BAR'S NOTICE OF MOTION AND MOTION TO DISMISS IN PART PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| BALANCE BAR COMPANY, a Delaware corporation, | |
| Defendant. | Date:           August 22, 2012 |
| | Time:           9:00 a.m. |
| | Courtroom:   3 |
| | Floor:          3rd |
| | Judge:         Hon. Phyllis J. Hamilton |
| | Action Filed: September 13, 2011 |

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO PLAINTIFF AND HER ATTORNEYS OF RECORD: |
| 3 | PLEASE TAKE NOTICE that on August 22, 2012, at 9:00 a.m., or as soon thereafter as |
| 4 | the matter may be heard in the courtroom of the Honorable Phyllis Hamilton, United States |
| 5 | District Judge, Northern District of California, located at 1301 Clay Street, 3rd floor, Courtroom |
| 6 | 3, Oakland, CA 94612-5212, Defendant Balance Bar, Inc., will move, and hereby does move, to |
| 7 | dismiss in part the complaint of Plaintiff Kimberly Sethavanish pursuant to Federal Rule of Civil |
| 8 | Procedure 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can |
| 9 | be granted. |
| 10 | This Motion is based on this Notice of Motion and Motion and Balance Bar's supporting |
| 11 | Memorandum of Points and Authorities, as well as on other court records and files in this action. |

Dated: June 25, 2012

NORMAN C. HILE
KATIE C. DEWITT
JOHN W. KILLEEN
Orrick, Herrington & Sutcliffe LLP


By: /s/ Norman C. Hile
    NORMAN C. HILE
    Attorneys for Defendant
    BALANCE BAR COMPANY

-1-

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO. OF P&AS IN SUPPORT THEREOF –
CV-11-04547-PJH

OHSUSA:750936754.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Balance Bar, Inc. ("Balance Bar") hereby moves to dismiss in part Plaintiff Kimberly Sethavanish's Second Amended Complaint, filed May 18, 2012 ("2nd Amended Compl."). As detailed below, Plaintiff's newly pleaded[1] claim that Balance Bar violated the Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301 *et seq.,* contains irreparable flaws and thus should be dismissed, with prejudice, for failure to state a claim for which relief can be granted.

## II. STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues:

1. Can the "All Natural" language on Defendant Balance Bar's wrappers constitute a "written warranty" under the Magnuson-Moss Warranty Act?

2. Can Plaintiff proceed with a class action suit under the MMWA without demonstrating compliance with the jurisdictional requirements for filing a district court suit under the Act?

## III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that Balance Bar's use of the descriptive term "All Natural" on the wrapper of its energy bars violates numerous provisions of state and federal law because these bars contain ingredients that are not "all natural." *See* 2nd Amended Compl., ¶¶ 1-4. According to Plaintiff, beginning in approximately September 2009, she made periodic purchases of Balance Bar energy bars in reliance on her belief that the energy bars were "all natural." *Id*. at ¶ 7. She later learned that Balance Bar energy bars included purportedly "synthetic" or "artificial" ingredients. *Id*. at ¶¶ 6-7. These ingredients were, at all times, clearly disclosed on the label of such energy bar wrappers. *Id*. at ¶ 2. Plaintiff now claims that had she known "the truth that Balance Bars were not all natural, she would not have purchased Balance Bar's products." *Id.* at ¶ 7.

---
[1] Plaintiff did not allege any claim under the MMWA either in her original or First Amended Complaint.

## IV. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A plaintiff's obligation to provide the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558–59.

## V. ARGUMENT

Plaintiff's first claim for relief that Balance Bar violated the MMWA is irreparably flawed and thus should be dismissed, with prejudice, because the "All Natural" language on its energy bar wrappers cannot qualify as a "written warranty" under the Act. The Act is inapplicable to Balance Bar's "All Natural" language because it cannot be a "written warranty" as 1) it does not promise that Balance Bar energy bars are "defect free" and 2) product descriptions are not written warranties under the MMWA. Finally, Plaintiff's claim must also be dismissed for failure to plead the jurisdictional requirements for maintaining a district court suit under the MMWA.

### A. The "All Natural" Descriptive Language on the Wrapper Cannot Qualify As A "Written Warranty" Under The MMWA

#### 1. The Wrapper Does Not Promise A "Defect Free" Product

The MMWA creates a federal private cause of action for consumers damaged by the failure of a supplier "to comply with any obligation . . . under a written warranty." 15 U.S.C. § 2310(d)(1). "Written warranty" is defined narrowly by the MMWA, in relevant part, as follows:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and *affirms or promises that such material or workmanship is defect free* or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6) (emphasis added).  The "All Natural" language on the wrapper of Balance Bar energy bars fails to meet the definition of a "written warranty" under Subsection 2301(6)(A) because the wrapper does not promise a defect-free product or guarantee the product will meet a specified level of performance over a specified period of time.[2]

Plaintiff contends that the label constitutes "a written promise that ingredients in the Nutrition Energy Bars were free of a particular type of defect (i.e., that they were not synthetic or artificial.)" 2nd Amended Compl., ¶ 64.  Her formulaic recitation of the "defect free" element is unsupported by the wrapper itself—which clearly states no such promise.  Nor does Plaintiff cite any case law that would support her inference.  To the contrary, precedent supports the interpretation that the words "All Natural" are not a "written warranty" under the MMWA.  *See Hairston v. South Beach Beverage Co.,* 2012 WL 1893818 * 6 (C.D. Cal. May 18, 2012) (holding the "All Natural" language on Lifewater beverage failed to meet the definition of a "written warranty" because it "neither promises a defect-free product, nor guarantees a level of performance over a specific time period."); *In re Sears, Roebuck & Co.*, No. MDL-1703, 2006 WL 1443737 *1, 4 (N.D. Ill. May 17, 2006) (rejecting claim that "Made in USA" tool label created a warranty that such tools were indeed made in the USA); *see also Semitekol v. Monaco Coach Corp.*, 582 F.Supp. 2d. 1009, 1027 (N.D. Ill. 2008) (promise to install certain style of mirror not actionable under MMWA because it did not constitute promise of "defect free" product).  Rather, descriptive language, such as "All Natural", is merely a general "product

---

[2] Since Plaintiff does not claim that the words "All Natural" constitute a promise under the second prong of Subsection 2301(6)(A), that the product "will meet a specified level of performance over a specified period of time," Defendant will not analyze it here.  It is relevant, however, that Federal Trade Commission regulations implementing the MMWA imply that this is the dominant prong for determining a "written warranty."  *See* 16 C.F.R. § 700.3 (stating that a product disclosure that does not contain "a specified time period to which the disclosure relates" is not a written warranty for purposes of the Act).

description" that not subject to MMWA protections as discussed more fully below. *See Hairston* at \*6; *see also In re Sears, Roebuck & Co.* at \* 4.

Just eleven days ago in a nearly identical case, Judge Susan Illston rejected the argument that the purposeful use of synthetic ingredients in a food product labeled "all natural" produces an actionable MMWA claim. *See Larsen v. Trader Joe's Co.*, Case No. 11-CV-05188-SI (N.D. Cal. June 14, 2012) (dismissing, with prejudice, MMWA claim that food products labeled "all natural" were defective due to the addition of synthetic ingredients). Judge Illston rejected Plaintiff's claim that the use of synthetic ingredients in food that Trader Joe's labeled as "all natural" rendered that food defective, reasoning the "deliberate use of [synthetic] ingredients does not comport with the plain meaning of the word 'defect.'" *Id*.

Likewise, it would be nonsensical to find that Balance Bars labeled "All Natural" on their wrapper are defective due to the addition of what Plaintiff has identified as "synthetic" or "artificial" ingredients given that all of those ingredients have been certified by the Federal Drug Administration as being Generally Recognized as Safe and thus are excluded from premarket review and approval. *See* 21 U.S.C. §321(s) (detailing exclusion); 21 C.F.R. § 182.3013 (ascorbic acid); 21 C.F.R. § 184.1212 (calcium pantothenate); 21 C.F.R. § 182.1217 (calcium phosphate), 21 C.F.R. § 182.1320 (glycerin); 21 C.F.R. § 184.1619 (potassium carbonate); 21 C.F.R. § 184.1634 (potassium iodide); 21 C.F.R. § 184.1676 (pyridoxine hydrochloride); 21 C.F.R. § 184.1751 (sodium citrate); 21 C.F.R. §§ 182.3890, 182.8890 (tocopherols). Therefore, Plaintiff's irreparably flawed MMWA claim must be dismissed with prejudice.

**2.       Product Descriptions Are Not Written Warranties Under The MMWA**

Plaintiff's MMWA claim must also be rejected because it would impermissibly expand the reach of the MMWA to product descriptions. The MMWA was intended to target consumer product warranties that are "too complex to be understood, too varied to allow meaningful comparisons and too restricted to provide meaningful warranty protection." *Skelton v. Gen. Motor Corp.*, 660 F.2d 311, 314 (7th Cir. 1981) (citing S. REP. NO. 93-151 (1973); H.R. REP. NO. 93-1107 (1974)). In other words, the MMWA was intended to remedy situations where a seller offers what appears to be a warranty or guarantee, but the small print actually serves to limit or

1   exclude coverage for defects or other product failures.  *See* H. REP. NO. 93-1107, at 7706
2   (discussing a "growing source of resentment" among Americans with the inability to get many
3   "products properly repaired and the developing awareness that the paper with the filigree border
4   bearing the bold caption 'Warranty' or 'Guarantee' was often of no greater worth than the paper it
5   was printed on").
6         The product description of "All Natural" on Balance Bar wrappers does not purport to be
7   a warranty or guarantee, and given its plain language, it cannot be interpreted as a promise to
8   repair or replace a defect in the product.  This is why, as noted above, courts have consistently
9   held that such language is a general "product description" not covered by the Act.
10        Moreover, the Act subjects actual "written warranties" to a host of content and disclosure
11  rules that are entirely inappropriate in the context of a product description of "All Natural" on a
12  Balance Bar wrapper.  For example, the Act requires "written warranties" to "fully and
13  conspicuously" disclose, *inter alia,* "the names and addresses of the warrantors. . . the party or
14  parties to whom the warranty is extended. . . products or parts covered. . . [and] what the
15  warrantor will do in the event of a defect, malfunction, or failure to conform with such written
16  warranty—at whose expense—and for what period of time." 15 U.S.C. § 2302; *see also* 16
17  C.F.R. § 701.3 (implementing § 2302 of the Act).  Additionally, Subsection 2303 requires that a
18  written warranty "clearly and conspicuously designate" whether it is a "full (statement of
19  duration) warranty" or a "limited warranty." 15 U.S.C. § 2303.
20        As such, Plaintiff's attempt to turn the words "All Natural" on the Balance Bar wrapper
21  into a "written warranty" would effectively turn the MMWA on its head.  Sellers of consumer
22  products could not be sure whether or not general words describing a product on its packaging
23  might be interpreted as a "written warranty."  Far from ensuring that statements purporting to be
24  warranties are conspicuous and non-deceptive, Plaintiff's view would effectively force suppliers
25  of every consumer product with general product descriptions on its package label to include all of
26  the disclosures required by Subsection 2302, as well as to "clearly and conspicuously designate"
27  whether it was a full or limited warranty, as required by Subsection 2303.  This is obviously not
28  what the drafters of the MMWA had in mind when they set out to simplify and clarify warranties

OHSUSA:750936754.1

and/or guarantees. *See Skelton*, 660 F.2d at 326, n.7 (reasoning that drafters of the Act likely intended to exclude general descriptions of consumer products because "it would be excessively cumbersome to impose the Act's disclosures rules on every advertisement containing a description of a product or its components"); *see also Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 623 (11th Cir. 2001) ("Magnuson-Moss and the rules promulgated by the [Federal Trade Commission] . . . impose substantive obligations on manufacturers that *choose* to issue warranties, requiring clear disclosure of warranty terms in a single document") (emphasis added).

In sum, Plaintiff's attempt to plead that the "All Natural" product description on Balance Bar energy bar wrappers qualifies as a "written warranty" under the MMWA is not only contrary to the plain meaning of MMWA, but also its intent. It is simply impossible for Plaintiff to show that Defendant's "All Natural" language on the wrapper fits the definition of a "written warranty" under the Act. Thus, Plaintiff's MMWA claim is irreparably flawed and should be dismissed with prejudice.

**B.** **Plaintiff's Complaint Must Be Dismissed for Failure To Plead The Jurisdictional Prerequisites For Maintaining A District Court Suit Under The MMWA**

Even in the unlikely event that this Court finds that the words "All Natural" may be considered a "written warranty" under the MMWA, Plaintiff's claim must be dismissed for failure to comply with the jurisdictional requirements of the Act. 15 U.S.C. Section 2310(d)(3) provides that no claim may be brought in a United States district court—

(A) if the amount in controversy of any individual claim is less than the sum or value of $25;

(B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

(C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

However, Plaintiff has failed to comply with the requirements of subheadings (A) and (C). First, she has failed to aver that each of the purported class member claims is for at least $25. Second, her summary allegations regarding the "nationwide class of consumers" she seeks to represent are

insufficient to maintain a class action under the MMWA. *See* 2nd Amended. Compl., ¶ 1; *Barr v. General Motors Corp.*, 80 F.R.D. 136, 138 (S.D. Ohio 1978). Rather, Plaintiff must name at least 100 similarly situated plaintiffs in her complaint. *See Barr*, 80 F.R.D. at 138 (numerousity under MMWA not satisfied if class may contain 100 individuals; the 100 plaintiffs must be specifically named.) For these reasons alone, Plaintiff's MMWA claim must be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, Balance Bar respectfully requests that the Court dismiss Plaintiff's Magnuson-Moss Warranty Act claim without leave to amend.

Dated: June 25, 2012

NORMAN C. HILE
KATIE C DEWITT
JOHN W. KILLEEN
Orrick, Herrington & Sutcliffe LLP

By:   /s/ Norman C. Hile
NORMAN C. HILE
Attorneys for Defendant
BALANCE BAR COMPANY